UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSH FOREMAN,

     Plaintiff,

v.

ZEHNDER'S OF FRANKENMUTH,
INC., d/b/a BAVARIAN INN

     Defendant.

Case No.:

---

William R. Frush (P87016)
F&S LAW, PLLC
Attorney for Plaintiff
77 Monroe Center St NW
Suite 600 - #1028
Grand Rapids, MI 49503
(248) 675-9192
wfrush@fslawpllc.com

---

## **COMPLAINT**

    NOW COMES Plaintiff JOSH FOREMAN ("Plaintiff"), by and through his

attorney F&S LAW, PLLC, and hereby states for his Complaint against Defendant

ZEHNDER'S OF FRANKENMUTH, INC., d/b/a BAVARIAN INN (hereinafter

"Defendant") as follows:

F&S Law

## NATURE OF ACTION

This is an action for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, 28 C.F.R. Part 36, and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq. Plaintiff seeks remedies under federal and Michigan law for Defendant's failure to make its website accessible to individuals with disabilities. Plaintiff requests injunctive relief, compensatory damages, costs, and litigation expenses (including attorney's fees), as well as any other relief this Court deems fair and just.

## PARTIES

1.      Plaintiff JOSH FOREMAN ("Plaintiff") is a natural person and resident of Lorain County in the State of Ohio.

2.      Plaintiff has a determinable physical impairment that substantially limits one or more major life activities, i.e., the major life activity of seeing, due to Plaintiff's blindness. Plaintiff thus qualifies as a member of a protected class of individuals under the ADA pursuant to 42 U.S.C. § 12102(1)-(2), and 28 C.F.R. §§ 36.101 et seq.

3.      Plaintiff is also a member of a protected class of individuals under the PWDCRA, MCL 37.1103(d)(*i*)(B).

2

F&S Law

4.     As a result of his disability, Plaintiff relies on screen-reading software and other assistive technologies/software to access digital content, including websites and mobile applications, and obtain goods and services on equal terms with the non-disabled public.

5.     Plaintiff uses a computer program called VoiceOver to utilize the internet. VoiceOver is a built-in screen reader on macOS that provides auditory descriptions of on-screen elements, permitting Plaintiff to navigate and interact with his computer (and the internet) using keyboard commands and spoken feedback.

6.     Defendant is a domestic profit corporation registered with the Department of Licensing and Regulatory Affairs and authorized to conduct business in the State of Michigan.

7.     Defendant's registered agent is Albert F. Zehnder, with a registered office street address at 730 S Main St, Frankenmuth, MI 48734.

8.     At all relevant times, Defendant owned and operated Bavarian Inn Lodge, a hotel and resort complex located at 1 Covered Bridge Ln, Frankenmuth, MI 48734, which operates as an assumed name of Defendant.

9.     At all relevant times, Defendant owned, maintained, operated and/or controlled the following website related to Bavarian Inn Lodge: https://www.bavarianinn.com (hereinafter "Website" or "the Website"). On the

Website, Defendant advertises and offers its goods/services to members of the public, including Plaintiff.

10. The Bavarian Inn Lodge is a place of public accommodation under the PWDCRA because it is a business whose goods, services, facilities, privileges, advantages, and/or accommodations are extended, offered, sold, or otherwise made available to the general public. MCL 37.1301a.

11. The goods are services offered by Defendant's Website provide the ability to: (1) learn about and book hotel accommodations at the Bavarian Inn Lodge; (2) make reservations at Defendant's restaurants; (3) learn about and purchase access to Defendant's waterpark facilities; (4) browse and purchase merchandise through Defendant's online store; (5) purchase gift cards redeemable at Defendant's physical locations; and (6) learn about sales, offers, promotions, and special packages available at Defendant's Frankenmuth properties.

12. The access barriers encountered by Plaintiff on Defendant's Website have deterred Plaintiff from visiting Defendant's Bavarian Inn Lodge because Plaintiff was unable to meaningfully comprehend and/or navigate Defendant's Website.

13. Defendant's Website is the primary, and often exclusive, method by which Defendant advertises its Frankenmuth properties, including the Bavarian Inn Lodge, to prospective customers. The Website serves several essential functions that

create a substantial nexus with Defendant's Michigan places of public accommodation.

14. The Website enables customers to research Defendant's hotel accommodations, dining options, and waterpark facilities, compare room types and pricing, view amenities and accessibility features, and determine availability. Plaintiff attempted to use the Website to book a hotel room. Therefore, Defendant's Website is sufficiently connected to Defendant's physical places of business such that there is a nexus between Defendant's Website and physical places of business.

15. The Website provides essential pre-visit information about the Bavarian Inn Lodge, including room types, amenities, accessibility features, pricing, availability, restaurant menus and hours, waterpark schedules, and contact information that customers need to make informed decisions before visiting.

16. The Website serves as Defendant's reservation system for its hotel, restaurants, and waterpark. The Website is therefore the primary and most accessible method for making reservations at Defendant's Bavarian Inn Lodge.

17. Defendant's Website advertises goods and services (i.e., hotel rooms, restaurant reservations, waterpark admissions, and merchandise) that can only be physically consumed at or fulfilled by Defendant's brick-and-mortar locations in Frankenmuth, Michigan. The transactions initiated on the Website culminate in the provision of services at Defendant's physical locations.

18.     Defendant itself has recognized this connection by creating the Website that specifically serves as the gateway to the Bavarian Inn Lodge. Defendant controls, operates, and maintains the Website that connects online transactions to physical fulfillment at the Bavarian Inn Lodge.

19.     Because Plaintiff was unable to navigate Defendant's Website to book accommodations at the Bavarian Inn Lodge, he was effectively denied access to Defendant's Michigan places of public accommodation. The Website's inaccessibility operates as an unlawful barrier that prevents Plaintiff from accessing services that would be fulfilled at Michigan locations, thereby violating both the PWDCRA and the ADA's prohibitions on disability discrimination.

20.     Defendant's Website is thus also a place of public accommodation under the PWDCRA, MCL 37.1301(a).

21.     Defendant's places of business are places of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(A)-(B).

22.     Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(A)-(B).

**JURISDICTION AND VENUE**

23.     Plaintiff incorporates by reference paragraphs 1 through 22 as if fully stated herein.

6

24.    This Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331(a): "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

25.    This Court has supplemental jurisdiction over Plaintiff's PWDCRA claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's ADA claims that they form part of the same case or controversy.

26.    Venue is proper in the United States District Court for the Eastern District of Michigan, Northern Division, pursuant to 28 U.S.C. § 1391(b)(1)-(2) because this is the judicial district in which the Defendant resides and in which a substantial part of the events or omissions giving rise to this claim occurred.

<u>**FACTUAL BACKGROUND**</u>

27.    Plaintiff incorporates by reference paragraphs 1 through 26 as if fully stated herein.

28.    Plaintiff, born in Grand Rapids, has concrete, definite, and recurring plans to return to Michigan at least five times per year. Plaintiff currently resides in Lorain County, Ohio, but maintains strong ties to Michigan through family and childhood connections.

F&S Law

7

29.     Plaintiff, like many other Michiganders, visited Frankenmuth as a child and desires to return as an adult to experience the town's unique attractions, restaurants, and hospitality offerings.

30.     For Plaintiff's next planned visit to Michigan in spring 2026, Plaintiff decided he would book hotel accommodations at the Bavarian Inn Lodge.

31.     Plaintiff specifically intended to book accommodations at the Bavarian Inn Lodge because it is Frankenmuth's signature hotel destination and offers comprehensive on-site amenities: restaurants, shopping, and waterpark facilities that would allow Plaintiff to enjoy a complete Frankenmuth experience.

32.     Plaintiff will require hotel accommodations because Plaintiff seeks to maintain his independence as an adult and handle his own travel arrangements rather than relying on his family members to plan his trip.

33.     On September 22, 2025, Plaintiff attempted to use Defendant's Website to research and book a hotel room for his spring 2026 visit.

34.     Plaintiff is an adult who values his independence and autonomy. Being able to independently research hotel options, compare prices and amenities, review available dates, and complete a reservation is a basic aspect of adult independence that non-disabled individuals take for granted. Plaintiff sought to plan and book his Frankenmuth trip independently rather than relying on sighted assistance from family or friends.

F&S Law

35.    Plaintiff encountered multiple critical accessibility barriers that prevented him from independently navigating Defendant's Website and completing a hotel reservation. Specifically, Plaintiff's screen reader could not identify visual content essential for understanding room options, amenities, and booking procedures.

36.    Accessibility errors are generally evaluated under technical standards developed by the World Wide Web Consortium that provide detailed specifications for making web content accessible to people with disabilities, publicly known as the Web Content Accessibility Guidlelines ("WCAG").

37.    WCAG guidelines are divided into levels of compliance: Level A (pages with level A issues are unusable for some people); Level AA (pages with level AA issues are very difficult to use); and Level AAA (pages with level AAA issues can be difficult to use).

38.    Websites are generally expected to maintain compliance with WCAG 2.1 Level AA or higher to be considered accessible. Level A issues—issues that are unusable for some people—are unacceptable as they prevent proper use of a website.

39.    The WCAG 2.1 level A issues experienced by Plaintiff prevented him from perceiving and navigating Defendant's Website in an understandable or robust way. Defendant's Website presented with errors that are unusable for some people, including Plaintiff. This was confirmed during Plaintiff's multiple visits to the site,

F&S Law

as the accessibility errors prevented him from completing a reservation on Defendant's Website.

40.    Throughout Defendant's Website, Plaintiff encountered dozens of images that his screen reader announced as "unlabeled image" or "graphic" with no descriptive information. When attempting to view room types, amenities, and waterpark facilities on the homepage, Plaintiff's VoiceOver provided no information about what these images depicted or what services they advertised.

41.    Defendant's Website—on the home page alone—contains 62 images that lack alternative text in violation of WCAG 2.1 Success Criterion 1.1.1 (Non-text Content) at Level A. These include room photographs, amenity images, waterpark facility pictures, and navigation icons that convey essential information about Defendant's services. The images fail to include any alt attribute, aria-label, aria-labelledby, or title attribute that would convey their content to screen reader users.

42.    Images without alternative text are among the most fundamental accessibility failures. Where these images convey important information about available services, room types, or amenities, blind users cannot access equivalent information. Plaintiff was denied the ability to understand what accommodations and facilities Defendant offered through these visual elements, preventing him from making informed booking decisions that sighted users make routinely.

43.     For example, Defendant's interactive waterpark map—a key feature for families booking at the Bavarian Inn Lodge—was completely inaccessible to Plaintiff. The map image lacked any alternative text, rendering this entire planning tool invisible to screen reader users. Plaintiff could not determine what waterpark attractions were available, their locations, or their features.

44.     When attempting to navigate the Website, Plaintiff encountered 14 links that had no discernible text whatsoever. When his screen reader landed on these links, it announced only "link" with no indication of where the link led or what function it served.

45.     These empty links violated multiple WCAG 2.1 criteria at Level A, including Success Criterion 2.4.4 (Link Purpose) and Success Criterion 4.1.2 (Name, Role, Value). The links lacked any accessible text—no visible text content, no aria-label, no aria-labelledby, and no title attribute. For screen reader users, these links are completely unusable because Plaintiff had no way to determine their purpose or destination.

46.     These violations prevented Plaintiff from navigating to critical pages including room details, reservation forms, restaurant information, and waterpark schedules. Links that provide no indication of their purpose or destination are fundamentally inaccessible and violate the most basic requirements of web accessibility.

47.    Plaintiff also encountered serious keyboard navigation barriers when attempting to interact with scrollable content areas on Defendant's Website. Multiple scrollable regions, including image galleries and content carousels, violated WCAG 2.1 Success Criterion 2.1.4 (Character Key Shortcuts) at Level A.

48.    When Plaintiff attempted to navigate through these scrollable areas using keyboard commands, his focus became trapped within the scrollable region or jumped unexpectedly to other parts of the page. This created significant confusion about his location on the page and what content he was accessing. These keyboard focus problems are not merely inconvenient; they create complete barriers to accessing essential information about rooms and amenities.

49.    The mobile navigation menu trigger image contained empty alternative text, preventing Plaintiff from accessing the navigation menu on mobile devices. This critical navigation element violated advanced accessibility guidelines by being marked as informative content yet providing no accessible name. On smaller screens or when accessing the site via mobile device, Plaintiff would be completely locked out of the navigation system.

50.    On or about January 19, 2026, Plaintiff's counsel conducted comprehensive accessibility testing of Defendant's Website home page using industry-standard automated evaluation tools. The testing confirmed that the same

critical accessibility barriers Plaintiff encountered remained present throughout the Website.

51.     The automated testing identified 63 critical violations, 28 serious violations, and 1 moderate violation. Of these, 79 violations directly affect blind screen reader users. The critical violations included 62 images without alternative text, 14 links without accessible names, and 1 inaccessible navigation menu trigger. The serious violations included 2 scrollable region focus management problems that trap keyboard users.

52.     The identified accessibility violations are not theoretical irregularities or subjectively open to interpretation. Defendant's Website presented objectively verifiable and determinable errors that violate WCAG 2.1 Level A guidelines. Level A violations—such as images without alternative text and links without accessible names—represent barriers that make websites completely unusable for people with disabilities.

53.     WCAG 2.1 Level A compliance represents the minimum threshold for accessibility. Websites with Level A violations are considered unusable for some people with disabilities. Defendant's Website home page fails to meet even the most basic Level A requirements in 63 critical areas.

54.     The identified WCAG 2.1 violations directly interfered with Plaintiff's ability to view room options, understand available amenities, access waterpark

information, navigate the Website, and complete a hotel reservation. These barriers denied Plaintiff full and equal access to Defendant's hospitality services in violation of the PWDCRA and Title III of the ADA.

55.     The accessibility violations identified by automated testing are not difficult or expensive to remediate. Adding alternative text to images, providing accessible names for links, and fixing keyboard focus management are elementary accessibility requirements that competent web developers know how to prevent. These violations demonstrate that Defendant has either: (1) failed to implement any accessibility testing or quality assurance for its Website, or (2) knowingly published a Website with accessibility barriers.

56.     Defendant has installed an automated accessibility widget called "UserWay" on its Website. This widget presents itself as an accessibility solution that purports to make websites accessible to users with disabilities through automated fixes and overlay features.

57.     When Plaintiff visited Defendant's Website, the UserWay widget was present and operational. However, the widget did not remediate any of the critical accessibility barriers Plaintiff encountered. The 62 images without alternative text remained unlabeled, the 14 links without accessible names remained unidentifiable, and the keyboard navigation barriers remained unresolved.

F&S Law

14

58.    Automated accessibility overlay widgets do not provide equal access and may actually create additional barriers for users with disabilities. Organizations representing blind and visually impaired individuals, including National Federation of the Blind ("NFB"), have specifically condemned accessibility overlay products as ineffective and potentially harmful substitutes for genuine accessibility remediation.

59.    The NFB, through Resolution 2021-04, stated that "automation alone cannot fix all of our nonvisual access issues on the Web" and called on companies to "develop the knowledge and expertise they need so that accessibility is considered and built from the ground up in everything that they do.

60.    Accessibility overlay widgets like UserWay cannot and do not fix underlying code-level accessibility barriers. These widgets operate as a superficial layer on top of inaccessible code and cannot add alternative text to images, repair improperly coded links, or fix fundamental structural accessibility violations in the Website's source code.

61.    Defendant's reliance on the UserWay widget demonstrates awareness of its accessibility obligations but a deliberate choice to pursue a superficial, inadequate solution rather than addressing the underlying technical violations. Installing an overlay widget while leaving the Website's code fundamentally inaccessible does not satisfy Defendant's obligations under the PWDCRA or ADA.

15

62.    Defendant's use of the UserWay widget, rather than remediating the Website's actual accessibility barriers, constitutes a pattern of deliberate indifference to the rights of individuals with disabilities. Despite having actual knowledge of accessibility requirements, as evidenced by its decision to install an accessibility widget, Defendant chose the path of least effort rather than implementing genuine accessibility fixes that would provide Plaintiff with equal access.

63.    The presence of the UserWay widget on Defendant's Website does not excuse or mitigate Defendant's accessibility violations. Plaintiff is entitled to a natively accessible website that complies with WCAG 2.1 standards through proper source code implementation, not a fundamentally inaccessible website with a superficial overlay that fails to provide meaningful access and may actually create additional barriers or confusion for blind users.

64.    The identified WCAG 2.1 Level A violations directly interfered with Plaintiff's ability to locate, understand, and utilize the information necessary to complete a hotel reservation on Defendant's Website, thereby denying Plaintiff full and equal access to Defendant's goods and services in violation of the PWDCRA and Title III of the ADA.

65.    Plaintiff's description of the accessibility barriers herein is based on his experiences during the visit described and confirmed through subsequent technical

F&S Law

testing. Additional details regarding specific navigation paths, error messages, and technical violations will be provided during discovery as appropriate.

66.    Defendant's Website functions as the principal gateway to its physical places of public accommodation. The Website does not exist as a standalone platform; rather, it is inextricably linked to Defendant's physical Bavarian Inn Lodge location by allowing consumers to engage in transactions (i.e., reservations) that are ultimately fulfilled at Defendant's place of business.

67.    Because the Website offers goods, services, accommodations, features, and/or amenities to the general public, the Website forms a nexus between the online services offered by Defendant and Defendant's Bavarian Inn Lodge.

68.    The Website is not merely informational but is a primary and integral extension of Defendant's physical place of public accommodation. By operating and offering the Website to the public, Defendant has subjected itself to the PWDCRA and ADA, which prohibit discrimination against individuals with disabilities and require Defendant to offer equal access to the goods and services offered by Defendant's places of public accommodation.

69.    Defendant's failure to operate and/or maintain its Website in a way that is accessible to blind users constitutes a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations otherwise

F&S Law

offered by Defendant's physical places of public accommodation in violation of the PWDCRA and Title III of the ADA.

70.     If Defendant addresses (i.e., fixes and/or repairs) the accessibility errors on their Website, Plaintiff intends to return to Defendant's Website. Because Plaintiff was unable to navigate Defendant's Website without the assistance of a sighted individual, Defendant has denied Plaintiff full and equal access to Defendant's goods and services on account of Plaintiff's disability.

71.     Requiring Plaintiff to make reservations by telephone rather than through the Website, the method readily available to non-disabled customers, does not satisfy Defendant's obligations under the PWDCRA or ADA. The law requires equal access, not separate and inferior alternatives. Plaintiff is entitled to the same privacy, independence, convenience, and ability to comparison shop that the Website provides to sighted users. Forcing disabled customers to use alternative channels is precisely the type of 'separate but equal' segregation that the ADA and PWDCRA prohibit.

72.     Defendant has not provided full and equal access to enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and Defendant's physical locations in contravention of the PWDCRA and ADA.

73.     Places of public accommodation under the PWDCRA and ADA must ensure that their goods or services are fully and equally provided to individuals with disabilities, who shall not be discriminated against solely on the basis of disability.

74.     The purpose of the PWDCRA and ADA are to provide an equal opportunity for individuals with disabilities to participate in all aspects of American civic and economic life. That mandate extends to internet e-commerce websites including Defendant's Website.

75.     Plaintiff is a disabled individual who is interested in patronizing and intends to access the Website once the Website's access barriers are removed or remedied.

76.     Plaintiff, like millions of other visually impaired and blind individuals, finds traveling outside of his home can be a difficult, hazardous, frightening, frustrating, and/or a confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

77.     Plaintiff's inability to independently complete a hotel reservation on Defendant's Website caused him significant emotional distress and dignitary harm. Specifically:

      a.   Plaintiff felt humiliated when forced to ask a sighted family member or friend for assistance; this dependence on others for tasks that sighted individuals complete with ease reinforces Plaintiff's sense that he is treated as a second-class citizen.

F&S Law

b. Plaintiff experienced anger and frustration when, after spending significant time attempting to navigate unlabeled images, identify room options and amenities, understand waterpark features, and activate inaccessible links on Defendant's Website, he was unable to accomplish what sighted users can do in minutes.

c. Plaintiff felt excluded and marginalized because Defendant's Website effectively told him that his business was not wanted and that Defendant did not value him as a customer. This reinforced the message that Plaintiff receives from businesses with inaccessible websites: accommodating people with disabilities is optional rather than mandatory.

d. Plaintiff's disability already requires him to navigate a world not designed for his needs. Defendant's failure to provide a basic accessible website, for which the technology has existed for years and is required by law, compounded Plaintiff's sense of isolation and demonstrated Defendant's indifference to his civil rights. Despite installing an accessibility widget that demonstrates awareness of legal obligations, Defendant chose a superficial solution over genuine accessibility remediation, further demonstrating deliberate indifference to Plaintiff's needs.

78.     Plaintiff has been denied the full enjoyment of the facilities, goods, and services of https://www.bavarianinn.com, and deprived of the opportunity to participate and enjoy the facilities, goods, and services offered by Defendant's brick and mortar locations as a result of accessibility errors encountered on the Website.

79.     The barriers that exist on the Website resulted in discriminatory and unequal treatment to individuals with visual disabilities, including Plaintiff.

80.     These injuries are ongoing. Plaintiff will continue to encounter these same barriers each time he attempts to use Defendant's Website to book accommodations for his regular Michigan visits.

## COUNT I – VIOLATION OF THE PWDCRA

81.    Plaintiff incorporates by reference paragraphs 1 through 80 as if fully stated herein.

82.    Plaintiff is an individual with a visual impairment that substantially limits a major life activity and qualifies as a disability within the meaning of the PWDCRA.

83.    The PWDCRA guarantees the opportunity to obtain the "full and equal utilization of public accommodations" without discrimination as a civil right. MCL 37.1102(1).

84.    A place of public accommodation means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

85.    Defendant's place of business is a place of public accommodation under the PWDCRA because it is a business whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

86.    Defendant's Website is also a place of public accommodation under the PWDCRA because it provides the general public with the ability to locate and learn

F&S Law

21

about Defendant's physical location and purchase goods and/or services at Defendant's physical location. The Website is thus an extension of, gateway to, and an intangible "service, privilege, and advantage" of Defendant's physical place of public accommodation (i.e., the Bavarian Inn Lodge) within the meaning of MCL 37.1302(a).

87.   The PWDCRA expressly states:

> except where permitted by law, a person shall not...deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids (e.g., screen-reading software). MCL 37.1302(a).

88.   Defendant's Website functions as an essential gateway to Defendant's Bavarian Inn Lodge because it is the primary means by which prospective customers, including Plaintiff, can access information regarding Defendant's goods, services, facilities, privileges, and accommodations.

89.   Because Defendant's Website provides information about Defendant's goods and services and functions as the essential digital gateway to Defendant's physical place of business, there is a nexus between the Website and Defendant's physical place of business.

F&S Law

90.    The PWDCRA applies to all aspects of the provision of goods and services by a place of public accommodation, including the use of digital platforms when those digital platforms are directly connected to the corresponding physical facilities and are essential to accessing and utilizing the facilities' services.

91.    Defendant's Website is designed, constructed, managed, operated, and/or maintained in a manner that is inaccessible to Plaintiff and other similarly situated individuals because it is not compatible with commonly used screen-reader software. The accessibility errors on Defendant's Website make the goods and services offered therein unavailable to Plaintiff and have deterred Plaintiff from visiting Defendant's physical locations.

92.    Defendant's Website contains specific, remediable barriers that contravene widely recognized accessibility standards as identified in detail above. The accessibility barriers directly denied Plaintiff the full and equal enjoyment of Defendant's goods and services by materially burdening tasks that sighted users can perform routinely.

93.    Plaintiff attempted to use Defendant's Website on September 22, 2025. Because of the accessibility errors described in detail above, Plaintiff was prevented from completing a hotel reservation solely based on his disability. This constituted an unlawful denial of equal access to Defendant's goods, services, and accommodations.

94.     As a direct and proximate result of Defendant's unlawful denial of equal access, Plaintiff has been denied the full and equal enjoyment of Defendant's goods, services, and accommodations. Plaintiff has suffered and continues to suffer both economic and dignitary harms, including:

    a.  Loss of independence and autonomy when forced to rely on sighted assistance to complete hotel reservations;

    b.  Humiliation, embarrassment, and emotional distress from being excluded from services readily available to non-disabled customers;

    c.  Frustration and wasted time attempting to navigate an inaccessible website;

    d.  Loss of privacy when required to share his travel plans and needs with third parties to obtain assistance;

    e.  Exacerbation of his sense of social exclusion and marginalization as a person with disabilities;

    f.  Lost opportunity to independently research, compare, and select hotel accommodations;

    g.  Denial of the dignity and the right to make independent consumer decisions.

95.     These harms are ongoing and will persist until Defendant remediates its website.

96.     Plaintiff is entitled to monetary relief for emotional injuries and reasonable attorney's fees under MCL 37.1606 as a result of Defendant's denial of equal access.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a. Damages for the dignitary harms, emotional distress, frustration, humiliation, embarrassment, loss of independence, and exacerbated feelings of segregation and exclusion Plaintiff has suffered and continues to suffer as a direct result of Defendant's unlawful denial of equal access;

b. An award of reasonable attorney fees, costs, and litigation expenses;

c. Pre- and post-judgment interest;

d. Any other relief as the Court deems fair and just.

## COUNT II – VIOLATION OF THE ADA

97.    Plaintiff incorporates by reference paragraphs 1 through 96 as if fully stated herein.

98.    Defendant operates a place of public accommodation within the meaning of 42 U.S.C. §12181(7)(A), because Defendant's physical locations are "an inn, hotel, motel, or other place of lodging" and are therefore subject to Title III of the ADA.

99.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

100.    Defendant's Website is covered under Title III of the ADA because it provides the general public with the ability to locate and learn about Defendant's physical places of business and to purchase goods and services offered in, from, and through Defendant's places of business. The Website is an extension of, gateway to, and intangible "service, privilege, and advantage" of Defendant's physical locations, and is therefore a covered service of a place of public accommodation under 42 U.S.C. § 12182(a).

101.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are equal to the opportunities afforded to other non-disabled individuals.

102.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate

F&S Law

26

that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

103. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden."

104. Defendant's non-compliant Website denies blind and visually impaired individuals full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in its physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

105. Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.

106. Violations may be present and on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

F&S Law

107.   There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other business entities in making their websites accessible. Incorporating basic accessibility improvements as described in WCAG 2.1 AA would neither fundamentally alter the nature of Defendant's business nor would they result in an undue burden on Defendant.

108.   Upon information and belief, Defendant's Website is substantially noncompliant with the current WCAG 2.1 AA guidelines and fails to be perceivable, operable, robust, understandable, or accessible by blind and/or visually disabled individuals such as Plaintiff.

109.   Defendant has and continues to violate the ADA by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. The violations within the Website are ongoing.

110.   Part 36 of Title 28 of the C.F.R. was designed and implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

111.   Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

112.   Regulatory guidance confirms that Title III specifically requires that places of public accommodation provide effective communication via auxiliary aids and services to individuals with disabilities. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems."

113.   28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

114.   Public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

115.   As a direct and proximate result of Defendant's failure to provide an ADA-compliant Website with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury-in-fact by being denied full and equal access to, and enjoyment of, Defendant's Website and the corresponding physical facilities. Plaintiff has

F&S Law

experienced dignitary and emotional harms, including frustration, humiliation, and loss of independence. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the ongoing disability discrimination.

116.   This Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief.

117.   Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.   A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b.   A permanent injunction requiring Defendant to take the steps necessary to make its Website fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

d.   Such other and further relief as this Court deems fair and just.



January 20, 2026

William R. Frush (P87016)
F&S Law, PLLC
Attorney for Plaintiff
77 Monroe Center St. NW Suite 600
Grand Rapids, MI 49503
wfrush@fslawpllc.com
(248) 675-9192

F&S Law